## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 23 2020, 10:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stacy R. Uliana
Jack Kenney
Bargersville, Indiana

ATTORNEY FOR APPELLEE

George A. Lohmeier
Allen Wellman McNew Harvey, LLP
Greenfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Samantha A. Walter, *Appellant-Petitioner,* | December 23, 2020 |
| v. | Court of Appeals Case No. 20A-DC-1520 |
| | Appeal from the Franklin Circuit Court |
| Dennis R. Walter, *Appellee-Respondent.* | The Honorable Clay M. Kellerman, Judge |
| | Trial Court Cause No. 24C02-1905-DC-323 |

**Najam, Judge.**

<h1 align="center">Statement of the Case</h1>

Samantha A. Walter ("Mother") appeals the trial court's decree of dissolution of her marriage to Dennis R. Walter ("Father"). Mother raises two issues for our review, namely:

> 1. Whether the trial court abused its discretion when it awarded physical and legal custody over the parties' minor children to Father.
>
> 2. Whether the trial court abused its discretion when it determined that Father's parents had provided a substantial loan to the marriage, which the court awarded to Father as a liability in its distribution of the marital estate.

We affirm.

<h1 align="center">Facts and Procedural History</h1>

In April of 2009, Mother and Father married. There were two children born of the marriage, H.W., born in 2011, and C.W., born in 2014 ("the Children"). In May of 2019, Mother filed a petition for dissolution of the marriage. In March and June of 2020, the trial court held an evidentiary hearing on the petition.

Thereafter, the court entered its decree of dissolution. In the decree, the court found and concluded in relevant part as follows:

> 20. Prior to separation of the parties, both parents were involved in the everyday upbringing of the boys. Upon separation, the parties agreed to an equal parenting arrangement. In an effort to maintain an amicable relationship with Mother, Father agreed, at her request, to reduce his parenting time. On January 17, 2020,

the parties entered into an Agreed Provisional Order providing for a joint legal and physical custody arrangement.

21. At trial, both parties testified that the joint legal and physical custody arrangement is not working. Amicable and productive communication between the parties has proven difficult for both and has been complicated by the presence and actions of Mother's significant other. Mother testified that she is "scared of what will happen" because Father "threatens" to seek custody of the boys. Mother characterizes her conversations and communications with Father as Father threatening to take the children if he does not agree to her demands. In reality, Father is merely acknowledging that if the parties cannot agree, then the issues of custody and visitation will be determined by the court after a contested trial. Father further testified that he agreed to work with Mother on her request for more limited parenting time in an effort to make co-parenting more workable in the long run. The evidence establishes that after doing so, he was met with less willingness to co-parent and demeaning treatment by Mother and her significant other in front of the children.

22. Mother is from Canada and the evidence establishes that she and her parents have a very real passion for the game of hockey. As the boys get older, the expenses of playing hockey continue to increase. In the past, Mother's parents paid for much of the expense for the boys to participate in hockey. Both parties agree that it would be difficult for the boys to participate in travel hockey if Mother's parents do not continue to fund it.

23. Father testified that while he supports the boys playing hockey, he is concerned that playing hockey has taken precedence over most other activities. The boys also have interests outside of the game hockey which include being able to participate in other sports such as baseball and basketball. The evidence establishes that Mother makes it an issue if the other things conflict with hockey and that she is unwilling to

communicate with Father regarding scheduling conflicts. Specifically, Mother made an issue of the boys playing a baseball game that conflicted with a hockey tryout despite the fact that the hockey tryout could be rescheduled to a different available date.

24. Mother and her significant other do coach the boys at times but they manage games and practices such that Father is denied access to the boys and denied opportunit[ies] to spend time with the boys when they are not on the ice.

25. The evidence further establishes that during the Covid-19 crisis when schools were doing virtual e-learning, the boys did not have school on Mondays. During this time, the parties were sharing parenting time equally. Father was supervising and complying with the school's lesson plans for each child. Without consulting with Father, Mother added her own lesson plans and insisted the Father follow them. Father disagreed with Mother's approach and the parties were unable to communicate to resolve the issue. The parties simply cannot communicate effectively and amicably to resolve simple issues such as rescheduling tryouts, time with the boys for each parent at ballgames and bigger issues such as the appropriate educational training for the boys.

26. Mother moved out of the marital residence which was the only home the boys knew until the time of separation. Father intends to retain ownership of the residence. Mother moved in with her significant other, Kaitlyn, and they are now renting their third residence since separation. Mother's family does not reside in the local area and Kaitlyn is also not from the local area.

27. It is undisputed that the boys' paternal grandparents have played a significant role in the boys' lives. The paternal grandmother was the primary daycare provider for their first three (3) years. Paternal grandparents are farmers and Father

frequently helps out on the farm. When he does, he often brings the boys along. It is also undisputed that the entire family frequently gets together for Sunday meals at paternal grandparent's home. The Court finds that the children have a significant and healthy relationship with their paternal grandparents and extended family.

28. It is undisputed the Father and his family are of the Catholic faith and Mother converted to Catholicism during the marriage. The boys attend St. Michael's Catholic School and attend church regularly with Father. The entire family attended church regularly prior to the separation. Mother now rarely attends church and lets hockey take priority [over] the children's religious training. Since separation, Mother has attended non-Catholic religious services with the boys.

* * *

30. The Court finds that an award of joint legal custody is not in the best interest of the boys. The parties' relationship is fraught with mistrust and the inability to effectively communicate. Prior to separation, Mother was dishonest with Father regarding her activities, communication with third parties and travel plans. As a result, Father placed a GPS tracker on Mother's vehicle as a means of being able to verify Mother's activities with the boys and her travel with them.

31. Having considered all statutory factors (whether expressly cited or not) and having considered all of the evidence, the Court hereby finds that it is in the best interest of the boys that Father be and hereby is awarded legal and primary custody of the boys subject to Mother's right of reasonable visitation which shall be that provided for in the Indiana Supreme Court's Parenting Time Guidelines and shall include a weekly overnight visit.

Appellant's App. Vol. 2 at 14-17.

[5] In addition, the court found that the parties had a marital liability of $104,000, which represented the balance of a loan owed to Father's parents. As to that loan, the court found:

> [Father's] parents loaned the parties $112,000.00 to finance a re-model of the marital home. [Mother] was present with [Father] and his parents when the loan was discussed and several of the checks from the parents were written to [Mother]. The court find's [Mother's] testimony that she "had no idea" if the monies were a loan or a gift is just not credible. [Father's] sister testified to conversations she had with [Mother] where [Mother] acknowledged it was a loan. Other ample evidence was presented that it was a loan and not a gift. The balance of the loan is now $104,000.00.

*Id.* at 12. The court awarded the $104,000 debt solely to Father in the distribution of the marital estate. This appeal ensued.

# Discussion and Decision

### *Standard of Review*

[6] Mother appeals the trial court's decree of dissolution. The court's decree is supported by findings of fact and conclusions thereon following an evidentiary hearing. We review such judgments under our clearly erroneous standard. *E.g.*, *Salyer v. Washington Regular Baptist Church Cemetery*, 141 N.E.3d 384, 386 (Ind. 2020). We "neither reweigh evidence nor judge witness credibility." *R.L. v. Ind. Dep't of Child Servs. & Child Advocates, Inc.*, 144 N.E.3d 686, 689 (Ind. 2020). Findings are clearly erroneous only when the record contains no facts to

support them either directly or by inference. *T.R. v. E.R.*, 134 N.E.3d 409, 414 (Ind. Ct. App. 2019). A judgment is clearly erroneous if the court applied an incorrect legal standard to the facts. *Id.*

### *Issue One: Custody*

[7] Mother first appeals the trial court's award of physical and legal custody over the Children to Father. In particular, Mother asserts that the court's judgment is clearly erroneous for each of the following reasons:

- Finding #20 does not accurately reflect that she was the "primary caregiver" to the Children prior to separation;
- Finding #20 is "misleading" because, while it acknowledges that Father made concessions to Mother, it does not acknowledge concessions Mother made to Father;
- Finding #20's statement that the parties had a "legal and physical custody arrangement" does not acknowledge that the pre-decree agreement provided for Mother to have primary physical custody;
- The court did not acknowledge that the Children had been living with Mother following her filing of the petition for dissolution;
- The court did not acknowledge that Mother has remained in the Children's community;
- Mother communicated with Father during the e-learning period "by sending him a checklist";
- Although the parties disagreed about whether to have the Children do e-learning on Mondays, they "communicated about it and each did what they thought was best";
- Mother's "laudable efforts at educating her [C]hildren were in their best interest[s]'"
- The finding that there was a dispute over the hockey scheduling is overblown and in any event "was only a potential conflict";
- The court's findings are "misleading" because they "omit[] the fact that Father violated the provisional order by failing to take the [C]hildren to their last hockey game";

- The court's finding that Mother denied Father time with the Children at hockey practices is based only on Father's testimony, which itself was simply speculation;
- Father's real reason for wanting to limit the Children's participation in hockey was because "Mother and Kaitlyn, as coaches, would get more time with the [C]hildren."

Appellant's Br. at 17-24.

[8]     Mother's arguments listed above, as well as other similar arguments, seek to relitigate the issue of custody on appeal. The trial court was under no obligation to agree with Mother's evidence or to give a full accounting of the evidentiary disputes in its decree. And Mother's arguments do not address the evidence most favorable to the trial court's judgment and our standard of appellate review. That is, Mother's arguments are not supported by appropriate citations to the record and cogent reasoning. Rather, her arguments are simply a request for this court to reweigh the evidence and both rely on the evidence she prefers and discount the evidence most favorable to the trial court's judgment. Mother's arguments are contrary to our standard of review, and, accordingly, we reject them.

[9]     Mother further argues that the trial court's determination of legal and physical custody is clearly erroneous. In particular, she asserts that the trial court was biased against her either because she is in a same-sex relationship or because she had ceased attending Catholic church. Nothing in the record on appeal or in the decree of dissolution supports Mother's attempt to impute bias to the trial court.

Mother complains that "the trial court allowed questions regarding Mother's relationship with Kaitlyn that had nothing to do with the best interest of the boys" and accuses Father of "belaboring the same-sex relationship" at trial. *Id.* at 30. The court noted, however, that it considered "all statutory factors (whether expressly cited or not)." Appellant's App. Vol. 2 at 17. In determining the best interests of the child, there is no presumption favoring either parent, *Goodman v. Goodman*, 94 N.E.3d 733, 748 (Ind. Ct. App. 2018), and among the factors to be considered when determining custody is the interaction and interrelationship of the child with "any other person who may significantly affect the child's best interests," Ind. Code § 31-17-2-8(4)(C) (2020). Since Mother and Kaitlyn occupy the same household, Kaitlyn is an "other person" and questions concerning her presence in the household are relevant and potentially implicate the best interest of the boys. Thus, we cannot agree with Mother's suggestion that there is a "reasonable indication that the trial court was not neutral on the issue of a parent's sexuality," which would require a remand for a new hearing. Appellant's Br. at 30.

Mother also complains about the court's finding in paragraph 28 that "Mother now rarely attends church and lets hockey take priority of the children's religious training. Since separation, Mother has attended non-Catholic religious services with the boys." Appellant's App. Vol. at 16. That finding speaks to maintaining consistency with the Children, which is an appropriate concern for the trial court to consider in determining legal and physical custody. *See* I.C. 31-17-2-8 (2020). Mother has not met her burden on appeal to show

that the trial court's determination of legal and physical custody is clearly erroneous.

### *Issue Two: The Loan from Father's Parents*

[12] Mother also asserts that the trial court's finding that Father's parents had given the parties a loan during the marriage instead of a gift is clearly erroneous. Mother's whole argument here is a request for this Court to both rely on her testimony and to discredit the contrary testimony of Father and Father's parent. Again, Mother is asking this Court to reweigh the evidence, which we will not do. The trial court's judgment is supported by the evidence before it, and we cannot say that its judgment is clearly erroneous.

## Conclusion

[13] In sum, we affirm the trial court's award of legal and physical custody to Father and its determination that the $104,000 marital debt was a loan, not a gift, from Father's parents. Mother has not carried her burden on appeal to show that the trial court's judgment is clearly erroneous.

[14] Affirmed.

Riley, J., and Crone, J., concur.